# EXHIBIT A

**Frederick Winsmann, Ph.D., ABPP, LLC**
**222 Forbes Road, Suite 204**
**Braintree, Massachusetts 02184**

P: 857-231-2692                                   fwinsmann@frederickwinsmann.com

June 4, 2021

Mr. Stephen Huggard
Attorney at Law
Huggard Law, LLC
470 Atlantic Avenue, 4th Floor
Boston, Massachusetts 02210

Re:   United States of America v. Matthew Murphy (D.O.B.: 06/22/1996)
(United States District Court, District of Massachusetts; Docket No.:
19CR10286PJB)

**Sealed Document**

## CONFIDENTIAL PSYCHOLOGICAL REPORT

Dear Mr. Huggard:

I. Referral & Background

I have completed this report at your request in order to provide specific treatment
recommendations regarding Mr. Matthew Murphy (D.O.B.: 06/2  /1996). This
report, and my opinions herein, do not constitute an evaluation, including an aid
in sentencing evaluation, where typically detailed historical and offense-related
information, along with opinions concerning risk and diagnosis, are outlined.
Rather, the referral question that you have posed is for me to provide specific
treatment recommendations for Mr. Murphy's vis-à-vis his conviction and/or
incarceration on the matter noted below.

In this regard, I note that Mr. Murphy was charged with five counts of Sexual
Exploitation of Children for a series of behaviors committed between
approximately 2017 and 2019. On January 28, 2020, Mr. Murphy pleaded guilty
to these same charges. He awaits sentencing on this matter.

II. Professional Qualifications

I hold a Doctor of Philosophy degree in Psychology with an emphasis in clinical
psychology. I am additionally Board-Certified as a forensic psychologist by the
American Board of Professional Psychology, a Diplomate of the American Board
of Forensic Psychology, and I am a Fellow of the American Academy of Forensic

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 2 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC          **Sealed Document**

Psychology. I completed clinical training at the Bedford Veterans' Affairs
Medical Center, and I served as a Harvard Medical School Clinical Fellow at
Massachusetts General Hospital. I was a Captain in the United States Air Force
Reserve, where I performed and supervised the performance of character
evaluations on those desiring to become officers, and I served as a Police
Commissioner in the Town of Ashland, Massachusetts. I previously served on the
faculty at Massachusetts General Hospital, Department of Psychiatry, Center for
Psychoanalytic Studies. I am currently a Lecturer on Psychiatry at Harvard
Medical School. I am the Founder and Director of the Boston Symposium on
Psychology and the Law, and I am a former President of the Association for
Scientific Advancement in Psychological Injury and Law.

I am a licensed psychologist in the Commonwealth of Massachusetts, the State of
New York, and the State of Florida. I am currently in independent practice
providing clinical and forensic services. I have experience in treating individuals
exhibiting violent behavior and both perpetrators and victims of sexual abuse. I
have experience in conducting forensic evaluations of various referral questions. I
have been retained by attorneys and appointed by courts to complete such
evaluations. I have been deemed a qualified expert witness for particular forensic
questions in various courts in particular jurisdictions including Massachusetts,
New York, California, Florida, and the Federal system.

III. Data

In connection with this report, I consulted and reviewed multiple sources of
information pertaining to Mr. Murphy's development, legal history, psychological
functioning and his care and treatment. These materials included the following:

1. Presentence Investigation Report, Mathew Murphy, United States District
   Court, 04/07/2020
2. Report of Investigation, Department of Homeland Security, 05/02/2019
3. Medical Record, Wyatt Detention Center, 2019-2020
4. Matthew Murphy Certificates, Wyatt Detention Center, 2019-2020
5. Matthew Murphy Educational Records, 2001-2008
6. Reading Specialist Summary Report, North Pembroke Elementary School,
   10/19/2005
7. Educational Assessment, Pembroke Public Schools, 10/27/2005
8. Psychological Assessment, Pembroke Public Schools, 10/31/2005
9. Correspondence, Elena [*Illegible*] [Mr. Murphy's Maternal Grandmother]
   to Mr. Steven Huggard, Undated

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 3 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC          **Sealed Document**

In addition, I met with Mr. Murphy on three separate occasions via
videoconference. The first meeting occurred on September 15, 2020 and lasted for
approximately one hour. The second meeting occurred on December 30, 2020 and
lasted for approximately three hours. The third meeting occurred on January 5,
2021 and lasted for approximately two hours and fifteen minutes. During these
meetings, I administered psychological testing including the Personality
Assessment Inventory, the Beck Suicide Scale, and the Beck Hopelessness Scale.
Mr. Murphy denied COVID-19 medical problems on each occasion.

> *Brief Pertinent and Sexual History* [1]

Mr. Murphy was born to his parents as an "unwanted child." He has one sister,
who is six years his junior. He and his sister lived initially with their parents until
Mr. Murphy was approximately two years of age; at this point, their parents split,
and their father moved out. The nuclear family thereafter resided with his
maternal grandparents, aunts, and uncles (Presentence Investigation Report,
Mathew Murphy, United States District Court, 04/07/2020).

Mr. Murphy became closest in his family with his maternal aunt, who resided in
the home until she moved out when Mr. Murphy was approximately eight years of
age (Presentence Investigation Report, Mathew Murphy, United States District
Court, 04/07/2020). Mr. Murphy was thereafter responsible for a great deal of
family matters from a young age without the presence of a strong male role
model. He prepared his younger sister for school, helped shop, and helped clean
the household (Correspondence, Elena [*Illegible*] [Mr. Murphy's Maternal
Grandmother] to Mr. Steven Huggard, Undated).

Mr. Murphy reported having been sexually abused at age 11 years by another
resident (an unknown neighbor) of a summer campground where his family had a
trailer. Mr. Murphy performed "sexual acts" on the individual, who reciprocated
these unspecified acts with him. This occurred on three or four occasions
(Presentence Investigation Report, Mathew Murphy, United States District Court,
04/07/2020).

Mr. Murphy earned his high school diploma in 2014. He has not enrolled in
higher education, while he was attending a technical school at the time of his
arrest (Presentence Investigation Report, Mathew Murphy, United States District
Court, 04/07/2020).

---

[1] Extracted form records.

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 4 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC                      **Sealed Document**

In regard to interpersonal relations, Mr. Murphy apparently did not have any
friends during childhood and adolescence. He was verbally berated and physically
bullied in school (Presentence Investigation Report, Mathew Murphy, United
States District Court, 04/07/2020). In addition, he denied ever having dated
another individual. He has not been married or cohabitated with any partner, and
he does not have any children (Presentence Investigation Report, Mathew
Murphy, United States District Court, 04/07/2020).

In regard to substance use, Mr. Murphy reported having socially consumed
alcohol on multiple occasions beginning at approximately 20 years of age, while
he did not do so to excess. He used cannabis on two occasions, while he did not
enjoy its effects. He has never used any other illicit substance (Presentence
Investigation Report, Mathew Murphy, United States District Court, 04/07/2020).

Regarding employment, Mr. Murphy has been employed at a fast-food
establishment for approximately two years and as an electrical apprentice for five
years until his arrest for the governing offense in 2019 (Presentence Investigation
Report, Mathew Murphy, United States District Court, 04/07/2020).

During each meeting with this writer, Mr. Murphy denied present or historical
medical problems.

### Treatment History [2]

Mr. Murphy reported having been lonely and depressed throughout his
adolescence as he did not have any friends with whom he was close. He
experienced regular suicidal ideation with a plan (purposefully overdosing,
crashing his vehicle, or slashing his wrists) beginning at age 14 and through his
arrest for the governing offense at 22 years of age. However, the suicidal ideation
decreased markedly shortly following his arrest for the governing offense as he
realized at this point in time that his family supported him to a far greater degree
than he expected and realized. He denied ever having attended any mental health
treatment in the community (Presentence Investigation Report, Mathew Murphy,
United States District Court, 04/07/2020).

Mr. Murphy was admitted to Wyatt Detention Facility in 2019, when he denied
any mental health problems including anxiety and depression. In 2020, he was
diagnosed with Unspecified Insomnia Disorder and prescribed 150mg/day of
trazodone for sleep (Medical Record, Wyatt Detention Center, 2019-2020).

---

[2] Extracted from records.

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 5 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC                    **Sealed Document**

During the January 5, 2021 interview with this writer, Mr. Murphy reported that he ceased taking trazodone in late 2020 as his sleep had sufficiently improved. He was prescribed bupropion (75mg/day) at this time to treat symptoms of depression.

Since his arrival at Wyatt, Mr. Murphy has completed psychoeducational programs including Grief and Loss, Cognitive Behavioral Therapy, Coping Skills, Rational Thinking Workbook, Wellbeing and Self-Care, Decision-Making and Impulsivity, Comprehensive Critical Decision Power Workbook, Lessons from the Market and Financial Literacy, Rational Thinking, Criminal Lifestyles, Living with Others, Deviant Thoughts and Coping Strategies, Goal-Setting and Treatment Planning, Victim Impact Series Part Workbook, Healthy Living Workbook, Communication Workbook, Forgiveness Workbook, Coping Skills, Taking Personal Responsibility. In addition, he has completed the Sex Offender Treatment Program Series Schedule, Sex Offender Treatment Planning, and Sex Offender Planning Treatment Practices (Matthew Murphy Certificates, Wyatt Detention Center, 2019-2020).

In the January 5, 2021 interview with this writer, Mr. Murphy denied having received any disciplinary reports during his detention at Wyatt.

*Measures*

Personality Assessment Inventory (PAI)

The PAI is an instrument designed for the psychological assessment of individuals, and it is considered a valid and reliable test in this regard. It assists, among other areas, in ascertaining the presence of personality traits and psychopathology. Scores on the measure are measured in *t*-scores (standardized test statistic used to compare scores in a population), which are linear with a mean of 50 and a standard deviation (a measure designed to quantify the amount of variation or dispersion of a set of data values) of ten. Results are derived by comparing Mr. Murphy's scores to the sample of scores used in creating the instrument and providing the reference points for comparison. This is called the development sample, and it creates the normative data, or that which is usual in a defined population, for the measure. Therefore, results from the PAI do not represent absolute attributes of Mr. Murphy, but, rather, how he compares to the developmental sample.

The PAI scores a number of validity indices designed to determine the presence of any factors or responding patterns that may distort test results. Examples of

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 6 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC          **Sealed Document**

such factors include carelessness, reading difficulties, exaggeration, malingering, or defensiveness. For Mr. Murphy, the results of the measure appeared valid, and no validity scales were elevated such that the results appear distorted in any way. As such, the measure, and its results, are consequently viewed as an accurate indicator of Mr. Murphy's current psychological functioning.

With regard to the clinical scales, multiple scales were elevated such that Mr. Murphy's profile is significant for a number of psychological problems. On the Anxiety and Anxiety-Related Disorders scales, he scored a 75$t$ and 80$t$, respectively, which each indicate extreme symptoms of anxiety that are having a profound and negative impact on his life. The Traumatic Stress and Obsessive-Compulsive subscales in particular were elevated at 79$t$ and 76$t$.

On the Depression scale, Mr. Murphy scored an 84$t$, his highest on the measure, which places him above the 0.1% compared to the individuals on whom the measure was normed. Such a score indicates a high degree of depressive symptoms. For Mr. Murphy, his score on the cognitive and affective subscales far exceeded his score on the physiological subscale, indicating his depressive symptoms are primarily psychological more so than physiological in nature. In addition, he scored a 74$t$ on the suicide subscale, which indicates a significant risk for suicide.

Mr. Murphy scored a 71$t$ on the Paranoia scale, while this score was positively moderated by a 72$t$ score on the Hypervigilance subscale (which is related to anxiety). The elevation may be artificially high considering Mr. Murphy's relatively recent incarceration, which generates guardedness and a need to be vigilant. Regardless, a distrust of others remains present. He also scored a 76$t$ on the Schizophrenia scale, while subscales measuring psychotic experiences were not elevated. He scored a 73$t$ on the Borderline scale with particular elevation on the Identity Problems subscale (77$t$).

In addition, the PAI offers Treatment Consideration scales. The Treatment Rejection scale measures attributes and attitudes associated with an interest in treatment or personal changes of a psychological nature. Lower scores reflect examinees who acknowledge significant difficulties or impairments in functioning and are expressing a desire for help in managing associated symptoms. Individuals in this range are particularly receptive to treatment. Mr. Murphy's score of 0$t$ in particular, toward the nadir of the scale, is reflective of overwhelming distress. Relatedly, he scored a 71$t$ on the stress scale, which indicates an expression of very high stress levels.

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 7 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC                    **Sealed Document**

Mr. Murphy was also scored on the Nonsupport scale, on which he scored a 69*t*. Scores of this elevation indicate a perceived lack of social support vis-à-vis both the availability and quality of available social relationships. It is also indicative of particularly harsh perceptions of oneself as well as others and frequently leads to severe reactions to stress.

In sum, the profile is indicative of an individual who is dealing with marked distress and severe functional impairment manifested primarily in anxiety, depression, and hopelessness. Thought, mood, and personality disorders are all diagnostic considerations. In addition, the profile indicates the likely presence of a traumatic event which has caused and continues to cause distress and impairment. He likely finds these difficulties acutely overwhelming and is amenable to intervention.

The profile also is indicative of a socially isolated individual who has minimal interpersonal relationships that can be described as close and warm. This may manifest in limited social skills and awkwardness. The profile also indicates a series of thought processes marked by confusion, distractibility, and difficulty concentrating; however, active psychotic symptoms do not appear to be present.

The profile further indicates identity issues including having minimal sense of direction or purpose in life, which may exacerbate or perpetuate his anxious and depressive symptoms.

Finally, the profile indicates significant suspiciousness and hostility in relations with others, which may lead others to view him as particularly sensitive and easily insulted. Consequently, working and personal relationships with others may be strained and require a particularly high degree of support and assistance in order to succeed.

Beck Suicide Scale (BSS) & Beck Hopelessness Scale (BHS)

Mr. Murphy was administered the BSS and the BHS on January 5, 2021 in order to assess the degree to which he is at risk for suicide and endorses hopelessness, respectively. Results of the BSS did not indicate significant risk for suicide. Results from the BHS indicated a mild degree of hopelessness.

In regard to a chronology of suicidality, I queried Mr. Murphy regarding any history of suicidality during the September 15, 2020 interview. He reported first experiencing suicidal ideation at 10 years of age without any plan, and the ideation was relatively constant through 14 years of age. Since this time, the

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 8 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC                    **Sealed Document**

ideation has remained but has become situational particularly in times of stress.
He has never attempted nor come close to attempting suicide. Nonetheless, this
writer contracted Mr. Murphy for safety, who agreed to immediately reach out to
staff at Wyatt Correctional Facility if he felt suicidal ideation and before acting.

I note that during the December 30, 2020 interview with this writer, Mr. Murphy
reported having experienced suicidal ideation approximately six weeks prior to
the meeting. He contacted available mental health services at Wyatt, who spoke
with him and were able to alleviate the ideation. He denied experiencing ideation
beyond fleeting thoughts in the weeks since and reaffirmed his earlier safety
contract with this writer to reach out to staff at Wyatt if he experienced suicidal
ideation and before acting.

Finally, I discussed Mr. Murphy's suicidal ideation during the January 5, 2021
interview. He denied having such thoughts since the preceding interview with this
writer on December 30, 2020. Nevertheless, he again reaffirmed his earlier safety
contract with this writer to reach out to staff at Wyatt if he experienced suicidal
ideation and before acting.

IV. Treatment Recommendations Summary

Having considered the above data, and while it is the Court's purview, I make the
following recommendations in regard to treatment for Mr. Murphy:

- Should Mr. Murphy be sentenced to a period of incarceration within the
  federal correctional system, he should be remanded to the custody of a
  federal medical center rather than a federal correctional institution. This
  will better facilitate the below treatment recommendations.
- Mr. Murphy should be regularly evaluated for risk of harm to self or
  others, appropriate action taken as needed, and a safety management plan
  should be developed and implemented to address safety toward self and
  others. This is due to Mr. Murphy's history of suicidal ideation.
- Psychological testing indicated the possibility of multiple mental
  disorders. A comprehensive psychodiagnostic evaluation should therefore
  be undertaken in order to examine differential diagnoses for Mr. Murphy
  including any personality, thought, or mood disorders.
- Mr. Murphy should undergo a comprehensive psychopharmacological
  evaluation in order to address his mood instability, depression, and anxiety
  indicated by psychological testing and receive appropriate treatment.
- Psychophysiological testing, including penile plethysmograph and visual
  reaction time testing, should be administered to assist in making definitive

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 9 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC          **Sealed Document**

    determinations about sexual arousal patterns and diagnosis particularly in
    light of his younger age.

- Mr. Murphy should attend individual psychotherapy. Suicide remains an ongoing problem for Mr. Murphy and suicidality remains a very real concern. Psychotherapy is needed to provide treatment and to monitor any depression and/or other mood difficulties and suicidality. In addition, it is recommended that further evaluation regarding personality and psychopathology is conducted to determine the appropriate diagnoses and proceed with treatment accordingly. As noted above, Mr. Murphy should be regularly evaluated for risk of harm to self and others, appropriate action should be taken as needed, and a safety management plan should be developed and implemented to address safety toward self and others. I reemphasize this point concerning suicidality in particular because it is a real concern for which action should be taken wherever he is incarcerated.

- Once the above clinical issues are successfully addressed and managed, individual psychotherapy should seek to address Mr. Murphy's past trauma and personal development. The treatment should also address his identity issues.

- He should attend group psychotherapy with a particular focus on sexual offending with providers trained in treating younger offenders. Relatedly, he should attend psychoeducational classes addressing social skills and coping skills.

- Testing indicated an elevated degree of suspiciousness and hypervigilance in Mr. Murphy. Treatment should proceed accordingly with this distrust of others in mind. Care should be taken in building trust.

- He should attend vocational training for potential employment upon his release. He may be inclined to further pursue the field for which he was attending technical school at the time of his arrest.

- As he is a younger offender, treatment of any impulsivity or volitional control should take his age into consideration as impulsivity and behavioral control improve as one ages beyond the adolescent behavioral era.

**CONFIDENTIAL**

United States of America v. Matthew Murphy; Docket No.: 0101 1:19CR10286-1-PB
Attorney Stephen Huggard
June 4, 2021
Page 10 of 10
Author: Frederick Winsmann, Ph.D., ABPP, LLC                    **Sealed Document**

Respectfully submitted,


/s/ Frederick Winsmann, Ph.D., ABPP*
Clinical and Forensic Psychologist

*Licensed as a psychologist in Massachusetts, New York, and Florida. Board-
Certified as a forensic psychologist by the American Board of Professional
Psychology. Diplomate of the American Board of Forensic Psychology. Fellow of
the American Academy of Forensic Psychology.

**CONFIDENTIAL**