UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)   CRIMINAL NO. 19-CR-10286-PJB<br>MATTHEW MURPHY,      )<br>)<br>Defendant      ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Matthew Murphy pled guilty to the above-docketed indictment, which charges him with five counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251. For the reasons discussed below, the government respectfully requests that this Court impose a below-Guideline sentence, which includes a term of incarceration of 600 months and 60 months of supervised release.

**I.   Facts**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 9 through 21 of the Presentence Investigation Report ("PSR"). Essentially, the defendant pretended to be a teenage girl, persuaded boys to send "her" naked photos, and then used those photos as leverage to extort the boys. The defendant threatened exposure – to friends, family, school, police – in his efforts to obtain more sexual imagery of some boys. PSR ¶¶ 10-12, 18. He also extorted his victims for other reasons: to obtain access to some boys' Snapchat accounts so he could troll for additional victims; and to degrade some boys by making them dress up in women's underwear, making them hurt themselves or spread excrement on themselves, making them photograph themselves in public or when they were with their friends, making them masturbate on command or penetrate themselves with foreign objects,

and even making one boy ejaculate into a food item and eat it. PSR ¶¶ 18-19, 21. The defendant backed up his threats of exposure by sending some of the victims pictures of themselves or of other kids. PSR ¶¶ 20, 21. The defendant also sent illicit pictures of at least one victim to another Snapchat user. PSR ¶ 21.

## II.     Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 51 (which should be considered as 43, pursuant to USSG Chapter 5, Part A, comment n.2) and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guideline sentence in this case to include incarceration for life; the Guideline range of supervised release is five years to life. The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guideline sentencing range ("GSR") as outlined above. The government also agrees with Probation's treatment of the defendant's objections to the PSR. For the reasons herein and to be articulated at the sentencing hearing, the government is recommending a downward variance from the GSR.

## III.    Restitution

Only two of the 15 charged victims are requesting restitution. Those requests are modest: Minor A is requesting $550.00 and Minor J is requesting $370.00, both as compensation for out-of-pocket co-payments for mental health counseling. Documentation supporting those requests has been provided to counsel for the defendant on this date. Counsel for the defendant has agreed to these amounts. The government submits that these requested amounts are reasonable determinations of the losses incurred and reasonably projected to be incurred in the future proximately caused by the defendant's offenses. 18 U.S.C. § 2259(c)(2). The victims'

submissions demonstrate that the losses are attributable to the statutory sources, namely medical services, which are "relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2)(A)-(F).

## IV.     Application of the Section 3553(a) Factors

For the reasons herein, and to be articulated at the sentencing hearing, the government submits that its recommended sentence is reasonable, and necessary in this case, to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and to protect the public.

The seriousness of this defendant's crimes cannot be understated. The scope of his offending is both breathtaking and heartbreaking. There are 15 victims who were positively identified and interviewed by law enforcement, and whose victimization is incorporated into the offense conduct. There are at least 20 others who have been identified but who declined to engage with law enforcement. There are hundreds of other Snapchat users, apparently minors, who the defendant was talking to but who could not be identified by law enforcement. The most troubling and terrifying aspect of these staggering numbers is that they were discovered only because one child – Minor A – came forward, no longer able to manage the stress and trauma of his manipulation by the defendant.

The scope of the offense here involves more than just an accounting of "how many" children fell prey to the defendant. Less easily computed – that is, quantified – is "how" the defendant victimized those children and how that victimization left its mark on each identified victim. The degradation, humiliation, and, in some cases, torture of these children is hard to *read* about, which begs the question: how can we understand how hard it was to endure? Any suggestion that the defendant's sadistic manipulation is any less serious than if he had abused them in person must be rejected. The statements submitted by and on behalf of some of the

victims show that premise to be false.  Would the victims who were forced to insert foreign objects into their bodies feel differently if it had been the defendant wielding the object rather than wielding threats of exposure if they didn't do it?  Maybe.  But "different" is not the same as "less serious."  The fact that more than one victim contemplated suicide as the only way to escape the defendant speaks volumes.  The fact that the defendant also contemplated suicide at some point in his youth does not excuse his behavior.  Conversely, it should have served as a motivation for empathy for the unsuspecting boys that fell into his trap.

Furthermore, the defendant violated a position of trust.  As a Boy Scout leader, he was looked to as not just a leader in name, but also a mentor, a friend, and a role model in practice, based on the persona that he projected to those in his orbit.  In that respect, Matthew Murphy is every parent's worst nightmare: a predator hiding in plain sight.  The fact that no one in the defendant's family ever suspected him of the depravity outlined in the PSR is frightening; it signals to the government that he poses a true danger to the public.  That is, if the people closest to the defendant – his family, his Scouting community – were not keyed in to the predatory nature of his relationship with Minor A, how can this Court expect any other person to see through his non-threatening, functional public and private persona once he is released?

This defendant, through the crimes documented in this case, has demonstrated himself to be a manipulative, deceitful, serial offender.  His participation in programming while in pretrial detention does not undercut the significance of the fact that prior to being caught, there was no demonstrated ability or attempt to cease, control, or even understand his behavior. (To be clear, the government agrees that significant mental health / behavioral therapy and oversight is a necessary component of the term of supervised release, and that the defendant would be well-served by taking advantage of whatever programming is available to him while he is

incarcerated.)  In order to accomplish all the goals of sentencing, however, the defendant *must* be sentenced to a truly significant term of imprisonment.

The government recognizes that it is difficult to quantify exactly how much time would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same types of opportunistic crimes against children, and that would protect the most vulnerable members of our society.  What *is* clear is that this is not a case that merits the minimum possible punishment allowable by law.  It is devastating.  Ultimately, this Court can be confident that the government's recommended sentence will achieve all of these goals of sentencing.

## CONCLUSION

For the foregoing reasons, along with those to be outlined at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 600 months in prison and a period of five years of supervised release.  Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

Dated: July 21, 2021      By:     */s/ Anne Paruti*
                                  Anne Paruti
                                  Assistant United States Attorney
                                  One Courthouse Way, Suite 9200
                                  Boston, MA 02210
                                  (617) 748-3100

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:


Date: July 21, 2021                               /s/ Anne Paruti_____
                                                  Anne Paruti
                                                  Assistant United States Attorney